Paul S. BURKA, et al., Plaintiffs,

v.

AETNA LIFE INSURANCE CO., et al., Defendants.

Civil Action No. 94–0975(CRR).

United States District Court, District of Columbia.

Feb. 12, 1996.

Peter A. Greenburg of Bethesda, MD, for plaintiffs.

Charles H. Fleischer of Marsh Fleischer & Quiggle, Chartered, Bethesda, MD, and Michael William Sacks of Thompson, Hine & Flory, Washington, DC, for defendant the American University.

Paul J. Kiernan of Holland & Knight, Washington, DC, for defendant Aetna Life Insurance Company.

Robert R. Vieth and Waller T. Dudley of McGuire, Woods, Battle & Boothe, L.L.P., McLean, VA, for Great Atlantic & Pacific Tea Company, Inc.

Jeffrey E. McFadden and Neil A. Greenberg of Mulrenin & Hubbard, P.A., Annapolis, MD, for Salon Jean–Paul, Ltd.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court is a Motion for Preliminary Injunction, filed by the defendant The American University (the "University") on December 22, 1995 in the above-entitled case. The plaintiffs filed an Opposition thereto on January 2, 1996, which the plaintiffs supplemented on January 22, 1996. The University filed its Reply on January 29, 1996. On January 2, 1996, the defendant Aetna Life Insurance Company ("Aetna") filed a Statement in Support of Motion for Preliminary Injunction. Also before the Court, are the Motions of The Great Atlantic & Pacific Tea Company, Inc. ("A & P") and Salon Jean–Paul, Ltd. ("Jean–Paul") for Leave to Intervene in the above-entitled case. A & P and Jean–Paul have submitted Motions for Preliminary Injunction as well. Finally, on February 5, 1996, the plaintiffs filed a Motion to Dismiss the Counterclaim of the American University or, alternatively, to Remand the Case to the Superior Court of the District of Columbia.

Based on the pleadings, the entire record herein, and the law applicable thereto, and for the following reasons, the Court shall deny the Motions of A & P and Jean–Paul for Leave to Intervene and for Preliminary Injunctions. The Court shall grant the University's Motion for Preliminary Injunction as provided herein. Also, the Court shall deny the Burkas' Motion to Dismiss and Motion to Remand, without prejudice to the Burkas' right to renew those motions after this case is remanded by the Court of Appeals.

## BACKGROUND

The above-entitled case involves a dispute concerning Lot 9, Square 1449 in the District of Columbia. For real estate tax assessment purposes, Lot 9 is further subdivided into two "assessment and taxation" lots, known as Lot 806 and Lot 807. Lot 806 contains a building known as 4801 Massachusetts Avenue, N.W., that the University now occupies as its law school. Lot 807 contains a supermarket and other retail stores, as well as a two-level parking deck with 106 spaces on the upper level and 110 spaces on the lower level.

From the early 1970s until 1993, all of Lot 9 was owned by the Burkas or by various combinations of the Burka family members or trusts for their benefit. In 1978, the Burkas ground-leased Lot 806 to a limited partnership consisting of their family members and others to construct the building on Lot 806. By deed of trust dated May 29, 1979, the leasehold estate and fee title to Lot 806 were subjected to a lien to secure the repayment of financing provided by the defendant Aetna. The building was constructed in 1979–80, originally for retail and general office use. The building includes a three-level underground parking garage.

A Declaration of Easement was executed on December 20, 1978 and recorded May 25, 1979, as Instrument No. 16911. The Declaration conveys

> to the owners from time to time of ... [Lot 806] ... and any ground lessee, tenants, occupants, guests and business invitees, a non-exclusive easement for vehicular parking of not less than 236 automobiles on the parking areas located from time to time upon ... [Lot 807].
>
> \* \* \* \* \* \*
>
> The owners from time to time of [Lot 807] ... shall, at its expense, maintain the driveways and parking areas located on ... [Lot 807] at its sole expense.... The owners of ... [Lot 807] shall have the right to establish uniform and reasonable rules, regulations and conditions governing the use of the driveways and parking areas as may be appropriate for the convenience

and safety of the persons making use thereof.

In early 1993, Aetna foreclosed and acquired fee title to Lot 806. On April 22, 1994, the Burkas filed the above-captioned case in the Superior Court of the District of Columbia against the defendant Aetna, seeking, *inter alia,* to invalidate the foreclosure by which Aetna had acquired title to Lot 806 and to invalidate the parking easement conveyed by the 1978 Declaration.

On May 3, 1994, Aetna removed the case to this Court on the basis of diversity jurisdiction. Aetna moved for and obtained summary judgment on all counts. On June 23, 1994, Aetna conveyed Lot 806 and the parking easement to the University by deed, retaining an interest as the secured party under a purchase-money deed of trust.

The Court of Appeals affirmed summary judgment as to the validity of the foreclosure and the Declaration of Easement. However, the Court of Appeals remanded the case for further consideration of the issue whether the building on Lot 806, known as 4801 Massachusetts Avenue, N.W., exceeded the gross floor area allocated to it under the Declaration of Easement. *Burka v. Aetna Life Ins. Co.,* 56 F.3d 1509 (D.C.Cir.1995). The Court of Appeals agreed with this Court that the gross floor area issue was not relevant to the validity of the contested documents but, rather, was relevant to the Burkas request for a declaration that neither Aetna nor its successors were entitled to use or erect any structure exceeding the 179,302 square feet specified in those documents. *Id.* at 1511–13.

After remand, Aetna and the Burkas filed motions to bring the University into the case. Aetna's motion sought to substitute the University pursuant to Fed.R.Civ.P. 25(c), while the Burkas' motion sought to join the University as an indispensable party pursuant to Fed.R.Civ.P. 19. Under Rule 25(c), the substitution of a nondiverse party, such as the University, would not divest the court of jurisdiction. The Burkas argued for the University's joinder under Rule 19 and for a remand to Superior Court because, under 28 U.S.C. § 1447(e), the Court may not retain jurisdiction over a case when a non-diverse party is joined.

On August 2, 1995, the Court granted Aetna's motion under Rule 25(c) and denied the Burkas' motion under Rule 19. The Court certified the matter for interlocutory appeal under 28 U.S.C. § 1292(b). The Court also granted the Burkas leave to amend their complaint. The Amended Complaint seeks cancellation of the easement granted by the Declaration because the size of the building on Lot 806 allegedly exceeds that allowed under the easement and because the building changed from retail and offices to a law school. The Burkas also seek $10 million in damages. The University has counterclaimed for declaratory judgment and permanent injunctive relief. Further court proceedings were stayed by Order filed August 23, 1995.

The Burkas' petition to appeal was granted by the Court of Appeals on December 1, 1995. A briefing schedule, providing for oral argument on May 9, 1996, was issued on December 12, 1995.

Meanwhile, in February 1995, the Burkas announced Parking Rules and Regulations purporting to regulate the use of the parking facilities on Lot 807. The University filed the pending motion for preliminary injunction on December 22, 1995, seeking an order enjoining the Burkas from enforcing the Rules and Regulations and from otherwise interfering with, restricting, or diminishing the rights granted and conveyed under the Declaration of Easement. It did so in anticipation of the opening on January 8, 1996 of its new law school facility at 4801 Massachusetts Avenue, N.W.[1] On January 2, 1996, the Court issued a "Notice to the Clerk" of the Court of Appeals, requesting that the Court of Appeals remand the above-entitled case for consideration of the University's Motion for Preliminary Injunction. By Order filed January 3, 1996, the Court of Appeals directed the parties to file responses to the Court's Notice.

Also on January 3, 1996, the Court held a hearing on the University's Motion for Preliminary Injunction. At that hearing, the parties reached an interim arrangement, which was supplemented by the Court and counsel for the parties at the close of the hearing and was entered in the above-captioned case. The arrangement granted the University exclusive use of 73 parking spaces in the lower level of the Burkas' parking garage. The arrangement further provided that, in the event the Court grants the instant motion for preliminary injunction, the University will retain exclusive use of the 73 spaces for the duration of the litigation. Also, the arrangement requested that the Court decide the preliminary injunction without considering whether there may be any failure to join any necessary or indispensable party, consider potential harm to third persons, and consider applications made by any third party to join or intervene. The Burkas further agreed not to appeal an order granting the preliminary injunction on the ground that an indispensable party was not joined.

On January 18, 1996, the Court of Appeals entered an Order stating that the District Court retains jurisdiction to consider the motion for preliminary injunction. The parties agree that the motion is ripe for the Court's disposition at this time.[2] Also for the Court's disposition are the Motions for Leave to Intervene by A & P and Jean–Paul, to which the Court turns first.

## DISCUSSION

### I. THE COURT SHALL DENY THE MOTIONS OF A & P AND JEAN–PAUL TO INTERVENE AS OF RIGHT PURSUANT TO RULE 24(a)(2) BECAUSE THEIR INTERESTS ARE ADEQUATELY REPRESENTED BY THE BURKAS.

Federal Rule of Civil Procedure 24(a)(2), entitled "Intervention of Right," provides

---

**1.** The University represents that the timing of its Motion for Preliminary Injunction was dictated by the recent issuance of a certificate of occupancy for the new law school building, by this Court's Order permitting an interlocutory appeal, and by the breakdown of settlement discussions between the University and the Burkas.

**2.** In the "Stipulation and Agreement," entered January 4, 1996, the parties request the Court to consider the University's motion for preliminary injunction on the papers and without live testimony. Thus, the extant motions by the parties concerning discovery shall be deemed moot.

Upon timely application anyone shall be permitted to intervene in an action: ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, *unless the applicant's interest is adequately represented by existing parties.*

Fed.R.Civ.P. 24(a)(2) (emphasis added). For an applicant to intervene as of right, it must show that its motion is timely,[3] that it has an interest in the subject property, that its interest will be impaired if the proceeding progresses without the applicant, and that it is now inadequately represented. *National Wildlife Fed'n v. Burford,* 878 F.2d 422, 433 & n. 15 (D.C.Cir.1989), *rev'd on other grounds sub nom. Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

### A. *A & P's and Jean–Paul's interests are adequately protected by the Burkas.*

■ A & P is a Maryland corporation, which operates a grocery store on the Burkas' property at Lot 807 in the District of Columbia. Jean–Paul is a District of Columbia corporation, which operates a beauty salon on the Burkas' property at Lot 807. A & P and Jean–Paul each assert that they have access to parking spaces pursuant to their respective leases with the Burkas.[4] Each allege their access to parking will be effected

by the use of these parking spaces by the University.

A & P and Jean–Paul lease their parking from the Burkas and, as such, any rights and interest they have to access in the parking garage are derivative of the rights and interest that the Burkas possess. Under their lease with A & P, the Burkas are expressly obligated to "prevent any interference with the operation of [A & P's] business ... by reason of the Declaration."

From the inception of this dispute, the Burkas have vigorously fought for their alleged rights and interest against the defendants. The Court is convinced that the Burkas will continue to do so at least until the conclusion of this case. A & P and Jean–Paul are not necessary parties to the full, fair, and efficient resolution of the matters under consideration here. The claims by A & P and Jean–Paul Burka may be litigated separately.[5]

### II. THE COURT SHALL DENY THE MOTION OF A & P TO INTERVENE PERMISSIVELY PURSUANT TO RULE 24(b)(2) BECAUSE A & P'S MOTION IS NOT TIMELY AND WILL UNDULY DELAY THE ADJUDICATION OF THE RIGHTS OF THE PARTIES.

■ A & P also moves for permissive intervention pursuant to Rule 24(b)(2), which provides

*Upon timely application* anyone may be permitted to intervene in an action: ... when an applicant's claim or defense and the main action have a question of law or

---

**3.** The Court determines below that the motion of A & P is not timely and, thus, A & P's intervention as of right is denied on that ground as well. As for the timeliness of Jean–Paul's motion to intervene, Jean–Paul's President claims to have not been told by the Burkas about the Declaration of Easement and claims to have first learned about the action on or about January 4, 1996. The Court need not decide whether Jean–Paul should have known about this action before that date, however, because Jean–Paul's application for intervention is denied on the ground that its interests are adequately protected by the Burkas.

**4.** A & P's lease provides:
for the reservation for the exclusive use of [A & P's] customers of the upper level parking area ... containing approximately 105 parking spaces.

Jean–Paul's lease provides:
*Parking.* The Tenant's customers will be permitted to park without charge in the covered garage located within the Center [Lot 807] on an as available, nonexclusive basis.
The parking facilities on Lot 807 allegedly are also used by DeCarlo's Restaurant and Apex Cinemas. Neither of those parties has moved to intervene in this case.

**5.** Jean–Paul asserts cross-claims against the Burkas for breach of contract, breach of covenant of quiet enjoyment, actual partial eviction, and negligent misrepresentation. It seeks no relief against the University or Aetna. Under 28 U.S.C. § 1367, the Court is without supplemental jurisdiction to hear Jean–Paul's claims against the Burkas.

fact in common. . . . *In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.*

Fed.R.Civ.P. 24(b)(2) (emphasis added). The timeliness of a motion to intervene does not depend solely on the amount of time that has elapsed since the litigation began, but on all the circumstances, including the purpose for which intervention is sought and the likelihood of prejudice to those already parties in the case. *See Hodgson v. United Mine Workers of Am.,* 473 F.2d 118, 129 (D.C.Cir. 1972).

### A. *A & P has not moved timely to intervene in this action.*

■ In its supporting papers, A & P admits that it has been kept apprised of this litigation but, until now, "has been content to remain on the sidelines as the Burkas litigated with Aetna and AU." Mem. in Support of Mot. for Leave to Intervene at 5. A & P claims that the University's recent Motion for Preliminary Injunction has "significantly altered the litigation landscape for A & P." *Id.* A & P further claims that "[i]ntervention by A & P will do nothing more than add the real party whose rights have been placed squarely at issue by the existing parties." Furthermore, A & P intimates that this litigation is in the preliminary stages. *See id.* at 6.

As detailed above, this litigation began in April 1994. On Motions for Summary Judgment, the Court adjudged the Declaration of Easement to be valid and binding on the Burkas. Moreover, that judgment has been reviewed by the Court of Appeals, which affirmed except to remand for a determination of the Burkas' alternative claim for declaratory relief as to whether the building constructed on Lot 806 exceeded a certain gross floor area set forth in one of the documents. More specifically, while the Court of Appeals agreed that the Burkas' gross floor area claim had no bearing on the validity of the documents, it remanded for a determination of the Burkas' gross floor area claim for declaratory relief. Thus, the only issue remaining is the gross floor area issue. This litigation is not in its preliminary stages.

Moreover, parking rights have been a central issue to this case since its inception. Even assuming A & P has a keen interest in parking rights, A & P does not begin to explain its failure to seek intervention until after the Declaration of Easement has been adjudged valid and binding on the Burkas.

### B. *A & P's intervention will unduly delay the adjudication of the rights of the original parties.*

This litigation has proceeded for nearly two years and there remains one issue to be determined. At the moment, the case is properly before the Court for the *limited* purpose of considering the University's Motion for Preliminary Injunction. In considering the preliminary injunction motion, the Court has considered the impact of a possible injunction on the Burkas' lessees. However, intervention by the lessees at this point, with the addition of their claims, will unduly delay these proceedings. The plethora of pleadings filed since the preliminary injunction motion pleadings has already delayed resolution of the instant motion.

In conclusion, the Court shall deny the Motions of A & P and Jean–Paul to intervene in the above-captioned case. Because A & P and Jean–Paul are not proper parties, their respective Motions for Preliminary Injunction shall be denied. The Court assures A & P, Jean–Paul, and all the Burkas' lessees, however, that their various interests were fully considered to the extent they will be impacted by the Court's decision to grant the University's Motion for Preliminary Injunction as set forth herein.

### III. THE COURT SHALL GRANT THE UNIVERSITY'S MOTION FOR PRELIMINARY INJUNCTION BECAUSE THERE IS A SUBSTANTIAL LIKELIHOOD THE UNIVERSITY WILL PREVAIL ON THE MERITS, THE UNIVERSITY WILL BE IRREPARABLY HARMED IF THE INJUNCTION IS NOT GRANTED, THE BALANCE OF HARM FAVORS GRANTING THE INJUNCTION, AND GRANTING THE INJUNCTION IS IN THE PUBLIC INTEREST.

To obtain an injunction, an applicant must show (1) that there is a substantial likelihood of success on the merits; (2) that the applicant will be irreparably harmed without the injunction; (3) that the balance of injury between the applicant and those to be enjoined favors granting the injunction; and (4) that the public interest will be served by the injunction. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977). The Court finds that the University has met each of the four required elements.

### A. *The University has shown a substantial likelihood of success on the merits.*

The validity of the Declaration granting a parking easement on Lot 807 has already been determined by this Court, has been affirmed by the Court of Appeals, and cannot be re-litigated now. While the question of gross floor area is unresolved as of yet, the University has made a substantial case on the merits that the gross floor area issue will not effect the University's parking rights on Lot 807 and that the Burkas February 1995 Parking Rules and Regulations interfere with those rights.

Specifically, the University asserts that the Burkas claim that the building exceeds the gross floor area allotment is barred by the 3–year statute of limitations for breach of contract actions because the breach occurred when the building was completed in 1980. The University also asserts that the doctrine of estoppel by deed prevents the Burkas from asserting claims contrary to the provisions of that deed. Furthermore, the University claims that the size of the building is irrelevant to any of the Burkas claims. Finally, the University asserts that the size and use of the building does not constitute a misuse of the parking easement.

In response to these asserted defenses, the Burkas contend only that "[t]he appellate court found that the Burkas had already adduced evidence in this case, that, if credited, constitute responses to each of these bars." In its opinion, however, the Court of Appeals held that the "gross floor area" issue has no bearing on the validity of the Declara-

tion. As for the declaratory judgment claim concerning the gross floor area, the Court held that the defenses asserted turn on questions of fact to be resolved on remand. Contrary to Burkas' characterization, the Court did not opine as to the adequacy of the evidence presented by either party. Significantly, the Burkas fail to address the merits of these defenses in its Opposition to the University's Motion for Preliminary Injunction. Furthermore, the Court finds that the University has shown a substantial likelihood that it would prevail on its claim that the gross floor area is irrelevant to the parking easement.

The Declaration grants to the owners of Lot 807, "a non-exclusive easement for vehicular parking of not less than 236 automobiles on the parking areas located from time to time upon [Lot 806]." The Declaration of Easement further provides that the Burkas shall, at their expense, maintain the parking areas. The Burkas have the right, under the Declaration of Easement, to "establish uniform and reasonable rules, regulations and conditions governing the use of the driveways and parking areas as may be appropriate for the convenience and safety of the persons making use thereof."

The Burkas' "Parking Rules and Regulations" limit the University's parking rights on Lot 807 to "the total necessary to satisfy the zoning and other laws and regulations of the District of Columbia . . ., inclusive of all parking spaces already on [Lot 806] and in vault space appurtenant thereto." Furthermore, the Rules and Regulations provide for a monthly charge for each parking space. There is no evidence that the Burkas imposed these Rules on any other user of its parking facilities.

The Rules and Regulations clearly are at odds with the Declaration. Under the Rules, the University would, in effect, be entitled to no parking on Lot 807, since the minimum zoning requirement for the building is 146 spaces, which would be fully met by the number of spaces in the building's garage. Furthermore, the Rules appear to the Court to be beyond those "uniform and reasonable rules . . . appropriate for the convenience and safety of the persons making use there-

of," as governed by the Declaration. The University has demonstrated a substantial likelihood of success in showing that the Rules and Regulations are an impermissible attempt to restrict enjoyment of its easement rights. *See Taylor v. Eureka Invest. Corp.,* 482 A.2d 354 (D.C.1984) (servient estate's attempt to impose parking fees on parking easement when easement silent on that issue violated the easement).

### B. *The University will be irreparably harmed without the injunction.*

The University opened its new law school facility this year. It estimates that the new facility will require some 75–100 parking spaces in addition to those located within its building garage in order to accommodate program needs for faculty, students, and staff.

In response, the Burkas point out that the University's opinion witness, Louis J. Slade, testified that the University "should be fine with 300 spaces," which exist in the building's garage.[6] At his deposition, however, Mr. Slade testified that although the building's garage contains approximately 300 spaces, 80 of these spaces are located in "vault space," which is outside of the University's property line and within the public right of way, and 35 of these spaces were not the full length of a legal parking space. He also testified that, it is desirable to provide more than 300 spaces.

The Court finds that the University will be irreparably harmed without an injunction. If the University's parking needs go unmet, the University's commitment to its faculty, students, and staff that they be provided with safe and convenient parking will be seriously jeopardized. In turn, the viability of the law school site, along with the University's present commitment to the American Bar Association's Committee on Accreditation, will be put at risk. Furthermore, the Court agrees that the Burkas' enforcement of the Rules and Regulations promise to be disruptive and confrontational. Absent an injunction, the University's rights under the easement will meet with considerable and irreparable interference.

### C. *The balance of injury between the University and the Burkas favors granting the injunction.*

In its Opposition, the Burkas have not asserted any specific injury to themselves upon the Court's grant of a preliminary injunction. To the extent the Burkas are harmed because they oversold their parking facilities, the Burkas brought this harm upon themselves. The Court finds that the balance of harm to the parties clearly weighs in favor of granting injunctive relief.

### D. *The public interest will be served by the injunction.*

The Court finds that the public interest will best be served by granting the injunctive relief sought. Adequate parking for the University will help contain noise, traffic, and congestion in the surrounding neighborhood. It will also provide safe parking for the faculty, staff, and students of the University which, in itself, is a resource to the community.

The Court is aware that at least three other parties and their customers will be affected by its decision. Their primary concern at the moment is that the interim arrangement granting 73 exclusive parking spaces to the University will irreparably injure them. In view of this concern, the Court shall decline to put in place any rule that is not consistent with the rights granted by the Declaration. Therefore, the University shall be granted only the right to "a non-exclusive easement for vehicular parking of not less than 236 automobiles on the parking areas located [on Lot 807]." Moreover, in the interest of the third parties, the university shall make all reasonable efforts to fully utilize its own parking facilities before using those on Lot 807. The Court shall enjoin the Burkas from enforcing the Parking Rules and Regulations issued in February 1995 against the University and from otherwise interfering with, restricting, or diminishing the rights granted and conveyed under the Declaration of Easement.

---

**6.** Oddly, the Burkas also herald that the University "seeks to flood" the parking facility, Opp. at

4, and, will "strangle the supermarket," Opp. at 14.

## IV. THE COURT SHALL DENY THE BURKAS' MOTION TO DISMISS THE UNIVERSITY'S COUNTERCLAIM AND SHALL DENY THE BURKAS MOTION TO REMAND CASE TO THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA.

The Burkas entered into a Stipulation and Agreement with the University, providing

The parties hereby jointly request the Court decide the University's motion for preliminary injunction without considering whether there may be any failure to join any necessary or indispensable party to this action; *provided, however,* that the Court shall consider potential harm to third persons resulting from injunctive relief and this request is without prejudice to any application which may be made by any third party to join or intervene in this action.

Furthermore, the Burkas represented in Court that they waived their right to appeal an order granting a preliminary injunction on the ground that an indispensable party was not joined. Incredibly, however, the Burkas now have moved to dismiss the University's counterclaim for declaratory and permanent injunctive relief or to remand the case for failure to join necessary and indispensable parties, namely, the Burkas' lessees.

This case is before the Court now for the *limited* purpose of considering the extant preliminary injunction motion. Third party applications to intervene have been submitted and decided herein. Potential harm to these parties has been carefully considered by the Court. The Court suspects that the Burkas' Motions are an attempt to circumvent their previous Stipulation and Agreement; however, the Burkas are well aware that the University's counterclaim is not before the Court at this time. The Burkas' Motions therefore will be denied without prejudice to the Burkas' right to renew them after the case is remanded by the Court of Appeals.

## CONCLUSION

For the above reasons, the Court shall deny the Motions of A & P and Jean–Paul to Intervene and for Preliminary Injunctions in the above-captioned case. The Court shall grant the University's Motion for Preliminary Injunction. The Court shall deny the Burkas' Motions to Dismiss and to Remand. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## *ORDER*

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 9th day of February, 1996,

ORDERED that the Motions of the Great Atlantic & Pacific Tea Company, Inc. for Leave to Intervene and for Preliminary Injunction [64] shall be, and hereby are, DENIED; and it is

FURTHER ORDERED that the Motions of the Salon Jean–Paul, Ltd. for Leave to Intervene and for Preliminary Injunction [63, 66, 73] shall be, and hereby are, DENIED; and it is

FURTHER ORDERED that The American University's Motion for Preliminary Injunction [51] shall be, and hereby is, GRANTED and it is

FURTHER ORDERED that the plaintiffs, their employees, agents, licensees, tenants, successors, and assigns, all those claiming through or under them, and all those acting in concert with them, are hereby enjoined, until further order of the Court, from (1) enforcing or attempting to enforce against the University and its guests, business invitees, and other occupants of the property at 4801 Massachusetts Avenue, N.W., Washington, DC, known as Lot 806, certain Parking Rules and Regulations announced by the Burkas in February 1995, and (2) otherwise interfering with, restricting, or diminishing the rights granted and conveyed under the Declaration of Easement and Agreement dated December 20, 1978, and recorded May 25, 1979, as Instrument No. 16911; and it is

FURTHER ORDERED that the University shall make all reasonable efforts to fully utilize its own parking facilities before using those on Lot 807; and it is

FURTHER ORDERED that, any further parking rules, regulations, or conditions of the Burkas' with respect to the University's parking rights on Lot 807 shall be submitted to the Court for prior approval; and it is

FURTHER ORDERED that the University shall file its bond in the amount 3,000.00 of Three Thousand and no dollars ($3,000.00), with surety approved by the Court, conditioned on the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined; and it is

FURTHER ORDERED that the Burkas' Motions to Dismiss Counterclaim and to Remand Case to the Superior Court of the District of Columbia [69] shall be, and hereby are, DENIED, without prejudice to the Burkas' right to renew after the case is remanded by the Court of Appeals; and it is

FURTHER ORDERED that the Burkas' and the University's Motions for leave to take expedited discovery [48, 50] and the University's Motion to offer live testimony [53] shall be, and hereby are, declared MOOT.