Robert L. **FIELDS** et al., Appellants,

v.

**DISTRICT OF COLUMBIA** et al.

No. 23315.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 15, 1970.

Decided Dec. 30, 1970.

As Amended Jan. 11, 1971.

---

Mr. Thurman L. Dodson, Washington, D. C., for appellants.

Mr. Joel C. Wise, Washington, D. C., with whom Mr. Roger Peed, Washington, D. C., was on the brief, for appellee Morrissette.

Messrs. Charles T. Duncan, Corporation Counsel for the District of Columbia at the time the brief was filed, and Hubert B. Pair, Acting Corporation Counsel at the time the brief was filed, and Richard W. Barton and Ted D. Kuemmerling, Asst. Corporation Counsel, were on the brief for appellee District of Columbia.

Before WRIGHT, MacKINNON and WILKEY, Circuit Judges.

MacKINNON, Circuit Judge (in Chambers).

This appeal involves the rights to a strip of land 16 feet by approximately 670 feet running from Talbert Terrace to Nichols Avenue in Southeast Washington. Appellants all own residential lots which abut on the strip of land, which is known as Parcel 231/5 Square 5869, and they allegedly have an easement for use of the strip as a "roadway," in common with others, by virtue of a reservation in a deed conveying the strip to the others, as tenants in common as and for a "private roadway." In recent years the roadway has not been

used over its whole length and is now overgrown with vegetation.

By deed in 1875, Catherine (also Catharin, in the deed) A. Talburtt conveyed the strip to Ella H. Barnard et al.[1] as tenants in common for the specific purpose of creating a "private roadway." The appellants allegedly claim their easement as successors in title to the easement reserved by the grantor in the 1875 deed, and the appellee, Arthur E. Morrissette, claims title in fee to the actual land underlying the roadway, Parcel 231/5 Square 5869, through tax deed from the District of Columbia dated December 31, 1963, recorded in Liber 12147 at page 322.[2] The validity of appellants' easement and of appellee's interest in the parcels to the controversy are not in question.

Morrissette desires to build multi-family dwellings of the garden-apartment variety on land which he owns adjacent to the roadway. His original plans called for the widening of the sixteen foot roadway to twenty-three feet to provide access to the parking facilities of the proposed apartment complex. There was also provision in the plans for the parking of some seven cars on the private roadway and for some other modifications. The District Court judge refused to enjoin Morrissette from building the roadway as planned but provided that appellants would be given a perpetual easement to the entire 23 foot roadway, and the parking places for the seven cars would be rearranged so as to not block access to the rear of the properties of two of the appellants, How-

1. The deed from Catherine A. Talburtt, as Guardian to Louis C. Talburtt, dated June 23, 1875 conveyed to Ella H. Barnard, Lucy H. Diver, Thomas J. Putnam and Chase Roys a strip of land about 16 feet wide and from 676½ feet to 671.91 feet long. The relevant provisions of the deed provide:

> * * * Now therefore this Indenture witnesseth that the said party of the first part for and in consideration of the premises aforesaid and the sum of eighty dollars * * * has bargained and sold aliened enfeoffed and conveyed and by these presents does grant bargain and sell alien enfeoff and convey unto the said parties of the second part their heirs and assigns as tenants in common and not as joint tenants all that certain piece of strip of land situate and being in the County of Washington in said District and known as and being the most southern sixteen (16) feet in width fronting on a certain roadway known as Nichols Avenue of lot numbered nine (9) of the subdivision of the tract known as Chichester. * * * To Have and to Hold the said strip or parcel of ground and appurtenances unto the said parties hereto of the second part their heirs and assigns as tenants in common and not as joint tenants as and for a private roadway leading to said Nichols Avenue and for no other purpose whatever reserving however to the said Louisa C. Talburtt her heirs and assigns the full right of way use and benefit of said ground and of any part

> thereof as a roadway as aforesaid in common with said parties hereto of the second part their heirs and assigns.
> * * *

2. The tax deed described the property as "known for purposes of assessment and taxation as Parcel 231/5 according to the records in the Property Tax Division of the District of Columbia" and ran from the Board of Commissioners of the District of Columbia, being signed by the secretary, G. M. Thornett, on December 21, 1963. It purported to convey "the hereinbefore described lands and premises, and the appurtenance thereunto belonging or in any wise appertaining" to Arthur E. Morrissette in consideration of the payment of $1,849.42. This sum represented the full amount for which said property was bid in and purchased (for nonpayment of taxes) by the District of Columbia at public sale, together with interest and charges thereon and all other assessments, taxes, interest, penalties, costs and charges due the District of Columbia, all as recited in the "Deed" (Property acquired by Private Sale), which included all unpaid taxes for each year beginning in 1889 and running to 1960. The other assessments covered the years 1961 to 1964, inclusive. The amount for which the property was bid in each year by the District of Columbia, or which represented sums due to the District of Columbia, varied from ninety-seven cents ($.97) in 1889 to $29.59 in 1960 and $40.86 in 1964, the last year.

ard and Patterson.[3] Also, if Morrissette's building plans were carried out, about half way up the strip an elevated curb would be erected by Morrissette diagonally across the strip so as to interfere with any use of the easement by appellants Howley and Cass, and at the end of the roadway farthest from the Nichols Avenue exit a planned retaining wall would slightly encroach on the 16 foot width. However, that end of the strip is very steep and has never offered access to Talbert Terrace which is the public road on that end. The trial judge thought the retaining wall was a *"de minimus"* infringement of the easement and only a technical one which when balanced against the paving of a 23 foot roadway would amount to a net gain to the appellants, albeit one they do not desire. Thus, the twenty-three foot easement which the trial judge approved *in lieu of* the original easement does not follow the line of the original easement or contain all of its actual footage. The trial judge and the appellees rightly point out that Morrissette's proposed roadway would allow appellants effective access to the rear of their lots which is something that has never been possible in the past. It is quite apparent that appellants seek principally not to protect their right to the easement, but rather to block the building of an apartment complex at their back gates. The trial judge, in his opinion, said:

> Equity traditionally does not grant an injunction such as is prayed for here for purely technical or minor violations of someone's rights. Equitable considerations must play a major part

in determining whether equitable relief should be granted. Equity jurisprudence differs from the law side of the courts, where it is sufficient to establish a technical violation of a right. We are not unappreciative of the policy and logic behind the District Court opinion. However, a careful survey of the case law of property rights in easements persuades us that the District Court erred in its decree which would deprive the appellants of rights which they have as a matter of law.

■ Appellants argue that the trial court erred in dismissing the complaint against the District of Columbia. As we read appellants' complaint, it involves a claim of title and rights to real property. The District of Columbia has only issued a building permit and in so doing it does not purport to adjudicate interests in land. No claim is made that officials of the District have abused any rights of the appellants in granting of the building permit. Nor is the District of Columbia a necessary party since complete relief could be granted by issuing an order addressed to Morrissette no matter what the finding of the trial court might be.[4] Therefore, the District was not a necessary party, and dismissing as to them was proper.

■ The first real task in resolving this controversy is to define the precise nature of the property right which the appellants assert they have.[5] For a number of years no taxes had been paid directly on the strip of land representing the easement, and in 1963 Morrissette paid the back taxes in order to acquire a

3. The relevant portion of the opinion of the trial judge provided:

"The Court will dismiss the complaint on the merits as against the defendant Morrissette on condition that he make the necessary adjustment of parking spaces in the proposed roadway so as not to interfere with access to the Howard and Patterson properties and also on condition that he convey to the plaintiffs a perpetual easement to use the entire roadway 23 feet wide in lieu of the original 16 foot right of way."

4. *See* Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 52, 75 S.Ct. 151, 99 L.Ed. 59 (1954).

5. Lidgerwood Estates, Inc. v. Public Service Electric & Gas Co., 113 N.J.Eq. 403, 167 A. 197, 199 (1933), pointed out that where, as here, the legal right is not in question, it is proper for a court sitting in equity to gauge the extent of the right and the relief necessary for its preservation, citing 1 Pomeroy 252 (4th ed. 1941).

tax deed to the land. The teaching of Engel v. Catucci, 91 U.S.App.D.C. 54, 197 F.2d 597 (1952) is that a tax deed does not extinguish an easement appurtenant which was created by a written conveyance.[6] The rationale is that such an easement runs with the dominant estate and enhances its value which is accordingly taxed at a higher rate.[7] *Engel* means that appellants' common easements appurtenant for a "roadway" were not extinguished or affected by the tax deed. The servient estate, which is basically the underlying strip of land described in Morrissette's tax deed, consists, at most, only of that interest which remains after the dominant easement appurtenant is carved out of it.

■■ The nature of the dominant interest in an easement created by deed is quite logically to be determined by the terms of the document creating it, at least in the first instance.[8] The 1875 deed conveyed fee title to the strip of land " * * * as and for a *private roadway* leading to said Nichols Avenue and for no other purpose whatever. * * * " (Emphasis added.) The strip abuts on the rear of the appellants' lots on the plat as recorded with the 1875 deed. From the location of the strip on the plat and the words of the grant it is clear that the intent of the original grantor was (a) to create an access to the land owned by the grantees and (b) to reserve an access to the land owned by the grantor, then designated as "Lot 9" and which presently includes a number of the lots owned by appellants.[9] Of course the use of the land has changed since the original grant and to some ex-

tent practical use of this strip may have changed considerably since its inception, but it is not questioned here that appellants are successors in title to a sixteen foot easement appurtenant for a "roadway" adjacent to the rear of their lots. Given the law in the District represented by *Engel,* and the language of the reservation which creates appellants' easement, all the appellants could reasonably expect that the entire sixteen feet would continue to be available for their use as a roadway. They were not required to so use it to preserve that right.[10]

The decision of the trial court does not recognize the right of appellants to a continuing easement immediately behind their lots. Instead, under its decree, Morrissette would be allowed to place curbs, parking places and retaining walls on the land within the area of the original grant and to compel appellants to accept an additional easement which they do not desire. All of these would be in derogation of the easement as originally reserved in the deed.[11] We recognize that the trial judge, as a condition of his dismissal of appellants' complaint, imposed a condition that Morrissette adjust the seven parking places he proposed to establish within the area of appellants' private roadway so as not to interfere with access to the Howard and Patterson properties. But that is an insufficient recognition of the rights of the other appellants and does not even fully recognize the rights of Howard and Patterson if the decree meant that Morrissette could permanently retain "some" parking places within the roadway adjacent to their properties. The reserva-

---

6. District of Columbia v. Capital Mortgage & Title Co., 84 F.Supp. 788 (D.D.C. 1949) predated Engel v. Catucci, *supra,* in holding that a tax deed does not extinguish an easement appurtenant established by grant. None of the parties have questioned whether the restriction imposed by the *grant* survived the tax sale. We thus have not considered that issue.

7. This is in accordance with the Restatement of Property, Servitudes § 509(2), see Comment.

8. Weaver v. National Gas Pipeline Co., 27 Ill.2d 48, 188 N.E.2d 18 (1963).

9. Kilmer v. Wilson, 49 Barb. 86 (N.Y. 1867).

10. Weaver v. National Gas Pipeline Co., *supra,* 188 N.E.2d at 18, 19.

11. Penn Bowling Recreation Center v. Hot Shoppes, 86 U.S.App.D.C. 58, 179 F.2d 64 (1949) recognizes that the extent of traffic and parking on a right of way easement have to be evaluated and are enjoinable.

tion made by appellants' predecessor in title was for the use of the entire strip as a "roadway," a use which would be substantially hindered by the location of parking spaces, curbs and retaining walls within the area to which the easement applies.[12] In the event Morrissette were allowed to develop this area as he proposes, it would forevermore be impossible for the appellants to develop the private roadway immediately contiguous to their lots in the form reserved by the original deed. In terms of legal concepts Morrissette's proposed incursions would amount to a continuing violation of the easement for which the District Court should have given injunctive relief.[13]

The key reason injunctive relief was not given by the trial court seems to be that it considered the appellants would be reasonably treated under the disposition it did make. There would be a paved roadway where there never was one before and this would give appellants practical access to their lots. The troublesome part of such disposition, however, is that it would take away appellants' rights in a "roadway" without their agreement and contrary to their desires and substitute an easement they do not desire. Such decree crosses the boundaries of equitable relief and the relief amounts to the reordering of property rights between private parties. The appellants are entitled to preserve their right to use or not to use the precise strip abutting their lots as a private roadway and are not required to submit to a substitution of some other location or arrangement which the trial judge considered to be similarly advantageous.[14]

In accordance with the foregoing the judgment is set aside and the case is remanded to the District Court for further proceedings consistent with this opinion, with the reservation of right to the appellants to apply for a temporary injunction pending final decision of the court.

So ordered.

12. Penn Bowling Recreation Center v. Hot Shoppes, *supra* note 11, 86 U.S.App. D.C. at 61, 179 F.2d at 67.

13. *See id.* at 60, 179 F.2d at 66.

14. Sakansky v. Wein, 86 N.H. 337, 169 A. 1 (1933); *cf.* Taylor v. Solter, 247 Md. 446, 231 A.2d 697 (1966); Weeks v. Lewis, 189 Md. 424, 56 A.2d 46 (1947).