**Paul S. BURKA and Robert A. Burka, Trustees, Appellants,**

v.

**AETNA LIFE INSURANCE COMPANY, et al., Trustees, Appellees.**

No. 94–7129.

United States Court of Appeals, District of Columbia Circuit.

Argued May 15, 1995.

Decided June 23, 1995.

Peter A. Greenburg, Bethesda, MD, argued the cause and filed the briefs for appellants.

Paul J. Kiernan, Washington, DC, argued the cause for appellees. With him on the brief was Gloria B. Solomon.

Before: WALD, ROGERS and TATEL, Circuit Judges.

PER CURIAM:

Appellants Paul and Robert Burka, trustees of a family trust, challenge the Aetna Life Insurance Company's ownership of a parcel of land formerly held for the Trust. The district court granted Aetna's motion for summary judgment, ruling that the Trust's former trustee had not exceeded his authority when he executed three documents pledging the Trust's interests in the land as security for a construction loan. The district court also held that appellants were not entitled to ground rents for the period between the default on that loan and the foreclosure sale. We affirm the district court's grant of summary judgment on these claims, but because the district court did not address appellant's alternative claim for declaratory relief as to whether the building constructed on the parcel exceeded the gross floor area set forth in one of those documents, we vacate the order dismissing the case and remand the alternative claim to the district court.

## I.

Appellants Paul and Robert Burka are the trustees of a family trust whose corpus included a three acre lot bounded by Massachusetts Avenue, 48th Street, and Yuma Street in the District of Columbia. Appellants and other family members established the Trust in 1976 to facilitate further commercial development on the lot, which until that time had been held by several family members and seven trusts of which they were beneficiaries as tenants-in-common. The agreement establishing the Trust designated the various family members and these seven trusts as beneficiaries and Sheldon Schuman as the sole trustee. As trustee, Schuman was directed to execute such instruments as were necessary to convey, encumber, lease or assign the property, "but only when and as directed to do so in writing by a majority in interest of the Beneficiaries." Trust Agreement, § 10, at 6 *in* Joint Appendix (J.A.) at 106.

In 1979, the Trust initiated a series of transactions to facilitate the eventual construction of an office building on the property. In the first of these transactions, a majority of the beneficiaries signed and Schuman executed a 99–year lease for approximately one-third of the Massachusetts Avenue lot [hereinafter the Land] to the Burka Limited Partnership, a D.C. partnership in which Fred and David Burka were general partners. *See* Indenture of Lease # 2 (Dec. 20, 1978) [hereinafter Ground Lease] *in* J.A. at 121–174. The Burka Limited Partnership in turn assigned its lessee's interest in the Land to the Spring Valley Center Limited Partnership, another D.C. partnership in which the same two men were general partners and which would construct and manage the office building. To facilitate the financing of the construction, the Ground Lease authorized Schuman as trustee to "execute, acknowledge and deliver any and all other documents at any time necessary to comply with the Lessor's agreements contained in said Lease, including, but not limited to

mortgages complying with Section 20.02 of this Lease." *Id.* § 35.01, at 43 *in* J.A. at 166. Section 20.02 gave the Lessee, now Spring Valley, the right "to negotiate and obtain construction and/or permanent loans ... secured by a first mortgage or first deed of trust of the Lessee's leasehold estate" and of the Trust's fee and reversionary interests in the Land. *See id.* § 20.02, at 29 *in* J.A. at 152.

Spring Valley negotiated a $14 million construction and permanent loan with the Aetna Life Insurance Company. In order to close on the loan, Schuman executed the three documents central to this dispute: the "First Amendment" to the Ground Lease, a Declaration of Easement and Agreement, and a Deed of Trust and Security Agreement. The First Amendment allocated the "gross floor area" available for construction on the entire three acre lot under the District of Columbia's zoning regulations between the parcel leased to Spring Valley and the adjacent area, specifying that the gross floor area of the proposed office building would not exceed 179,302 square feet. *See* First Amendment of Lease # 2 (May 24, 1979) *in* J.A. at 175–76. The Declaration of Easement and Agreement restated the limitation on the office building's gross floor area and granted the lessor an easement for parking in an existing garage on the adjacent property. *See* Declaration of Easement and Agreement ¶ 3(b)(ii), at 3 (May 24, 1979) *in* J.A. at 182. The Deed of Trust, signed by Schuman and Spring Valley, granted Aetna a first lien on Spring Valley's interest in the leasehold, on the Trust's reversionary interest in the leasehold, on the Trust's fee interest in the Land, and on all rents from the Land as security for the construction loan. *See* Deed of Trust and Security Agreement (May 29, 1979) [hereinafter Deed of Trust] *in* J.A. at 193–97.

The building was finished in 1980, but in January 1991 Spring Valley stopped making payments on its loan and on the rent due under the Ground Lease. Aetna sued Spring Valley on July 14, 1992 and moved for the appointment of a receiver to manage all of the property pledged as security for the loan under the Deed of Trust. The court appointed a receiver on July 17, but Spring Valley filed for bankruptcy protection under Chapter 11 two weeks later, automatically staying all other proceedings. On January 11, 1993, pursuant to an order of the bankruptcy court, Spring Valley rejected the Ground Lease. Aetna obtained relief from the automatic stay and conducted a foreclosure sale for the land on January 14, 1993 at which it was the highest bidder. Aetna took possession of the property on or immediately after that date. Aetna failed, however, to send separate written notice to appellants, who had replaced Schuman as trustees in October of 1992. Fearing a challenge to the January sale on these grounds, Aetna conducted a second foreclosure sale in April which fully complied with the Deed of Trust and D.C.Code Ann. § 45–715(b). *See Burka v. Aetna Life Insurance Co.,* No. 94cv0975, mem. op. at 17 (D.D.C. Jun. 23, 1994) *in* J.A. at 96.

Aetna subsequently agreed to sell the Land to the American University. The day before that sale was scheduled to close, appellants filed suit in the Superior Court of the District of Columbia challenging Aetna's ownership of the Land. In their complaint, appellants alleged that Schuman did not receive the written authorization from a majority of the beneficiaries required by the Trust Agreement to execute the Deed of Trust, the First Amendment to the Ground Lease or the Declaration of Easement and Agreement and therefore asked for a declaration that all three documents were ineffective against the Trust. Alternatively, appellants claimed that the office building exceeded the gross floor area specified in the First Amendment and the Declaration of Easement and Agreement and thus asked for a declaration that neither Aetna nor its successors were entitled to use or erect any structure exceeding the 179,302 square feet specified in those documents. In their final claim, appellants contended that Aetna owed them rent under the Ground Lease for the period beginning in January 1993 when it took possession of the building following Spring Valley's rejection of the Ground Lease. Aetna removed the suit to the United States District Court for the District of Columbia and moved for summary judgment on all claims.

The district court held that because the Ground Lease directed the trustee to execute and deliver any documents necessary to comply with the lessor's agreements, including a first mortgage secured by the Trust's fee interest in the Land, the signatures of a majority of the beneficiaries on the Ground Lease furnished the written authorization for Schuman to execute the Deed of Trust, the First Amendment, and the Declaration of Easement and Agreement. Those documents were therefore valid and binding on the Trust. The district court also held that, even if those signatures had not provided the requisite authorization, section six of the Trust Agreement barred appellants from asserting that Schuman had exceeded his authority to defeat Aetna's rights under the documents. Under that section, any instrument executed by the trustee is "conclusive evidence in favor of every person claiming any right, title or interest thereunder" that the trustee was duly authorized to execute that instrument. Trust Agreement § 6, at 4 *in* J.A. at 104. The court rejected appellants' alternative request for a declaration that the building exceeded the gross floor area specified in the First Amendment, holding that this claim was "not relevant" to determining whether the documents were enforceable against the Trust or whether the foreclosure sale was valid. The court also granted summary judgment on appellants' ground rents claim, ruling that either Aetna's first foreclosure sale in January of 1993 was valid since the Trust received actual notice of the sale, or that Aetna had a superior interest in the rents under the Deed of Trust.

## II.

■ We review the district court's grant of summary judgment *de novo*. Summary judgment is only appropriate where the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■ We begin with appellant's claim that the Deed of Trust, the First Amendment, and the Declaration of Easement and Agree-

ment are not enforceable against the Trust because Schuman was not authorized to execute them under the Trust Agreement. While we believe that summary judgment was appropriate on either of the grounds given by the district court—that the Ground Lease provided the written authorization required under section ten, or that section six of the Trust Agreement precludes the beneficiaries from raising an alleged lack of authority to defeat Aetna's rights under those documents—we limit our discussion here to section six, as that ground is sufficient to support the judgment.

Appellant's argument that Aetna had a duty to inquire into the trustee's authority to execute the Deed of Trust is flatly contradicted by the plain text of the first paragraph of section six of the Trust Agreement. Section Six states:

No party dealing with Trustees in relation to the trust property in any manner whatsoever, and no party to whom the property or any part thereof or interest therein is conveyed, contracted to be sold, leased, or mortgaged by Trustees, shall be obliged ... (2) to see that the terms of this Trust Agreement have been complied with; or (3) to inquire into the authority, necessity or expediency of any act of Trustees or the provisions of this instrument.

Every deed, mortgage, lease or other instrument executed by the Trustees in relation to the Property shall be conclusive evidence in favor of every person claiming any right, title or interest thereunder ... (2) that such instrument was executed in accordance with the terms and conditions of this Trust Agreement ... and is binding upon all Beneficiaries hereunder; (3) that the Trustees were duly authorized and empowered to execute and deliver every such instrument....

Trust Agreement § 6, at 4 *in* J.A. at 104.

Appellants claim that section six does not apply to third parties with actual knowledge that the trustee is acting contrary to the Trust Agreement. Appellants thus contend that if, as they allege, Schuman did not have written authorization to execute these documents, and if they can prove that Aetna had

actual knowledge that he lacked the requisite authorization, Aetna could not rely on section six to enforce the documents. We disagree. Section six specifically provides that *every* instrument shall be conclusive evidence in favor of *every* person claiming any right or title thereunder that the trustee acted within his authority, that the instrument was executed in compliance with the terms and conditions of the Trust Agreement, and that it is binding on the Trust and all its beneficiaries. *See id.* Appellants argue that this broad language must be read in conjunction with the limitations on the trustee's authority in section ten, but we agree with the district court that "the two sections set forth different requirements to govern two distinct relationships." *Burka v. Aetna Life Insurance Co.,* No. 94cv0975, mem. op. at 11 (D.D.C. Jun. 23, 1994) *in* J.A. at 90. Section ten governs the relationship between the trustee and the beneficiaries; section six governs the relationship between the trust and third parties. If, as appellants contend, Schuman exceeded his authority when he executed these documents, their claim is against him, not Aetna.

■ Appellants' claim for ground rents is equally without merit. In the event of default, the Deed of Trust gave Aetna the right to "take immediate possession of the Property . . . and until a foreclosure sale is made, to manage, control and lease the same . . . and to collect all rents, issues and profits therefrom. . . ." Deed of Trust ¶ 24(a), at 19 *in* J.A. at 211. The parties agree that Aetna took possession of the property on January 14, 1993. By doing so, Aetna perfected its security interest in the rents granted in the Deed of Trust. *See Democratic Central Committee v. Washington Metro Area Transit Comm'n,* 21 F.3d 1145, 1150 (D.C.Cir. 1994) ("[W]here rent[s] are pledged merely as security, . . . a mortgagee is not entitled to receive the rental payments from the mortgaged property until he acts to perfect his security interest in these payments by acquiring actual possession of the mortgaged property."); *see also In re 1301 Conn. Ave. Assocs.,* 126 B.R. 1, 2 (D.D.C.1991) ("[A]n assignment created for security purposes gives rise to an interest that cannot be perfected until the assignee directly or indirectly takes possession of the property."). Appellants thus have no right to receive ground rents from Aetna for the period after January 14, 1993.

Nor are we persuaded by appellants' argument that *Democratic Central Committee* requires that the mortgagee perfect its interest in the property through legal proceedings. *Democratic Central Committee's* emphasis on "legal proceedings" is explained by the fact that there, unlike here, the deed of trust did not grant the mortgagee the right to immediate possession of the property or to the rents during the period between default and the foreclosure sale, and that the mortgagee in that case, also unlike this case, did not obtain actual possession of the mortgaged property. *See Democratic Cent. Comm.,* 21 F.3d at 1152. We therefore affirm the grant of summary judgment on the ground rents claim.

### III.

■ While we agree with the district court that appellants' gross floor area claim had no bearing on the validity of the foreclosure sale or the validity of the contested documents, it nonetheless presents a claim against Aetna that the court must resolve. Acknowledging that the district court did not make any findings regarding this claim, Aetna argues that summary judgment is still appropriate either because the statute of limitations has run, or under the doctrines of laches and estoppel by deed. We disagree.

Aetna argues that the claim is barred by the three-year statute of limitations applicable to breach of contract actions, D.C.Code Ann. § 12–301(7) (1989). Appellants respond that it is the twelve-year statute of limitations governing actions on sealed documents that applies to this case, *see* D.C.Code Ann. § 12–301(6) (1989), and that in any event, under the discovery rule recognized in the District of Columbia, where a breach is difficult to discover, the statute does not run until the injured party should have known of the breach. *See, e.g., Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1201–04 (D.C.App. 1984). Because they did not have possession of the office building, appellants claim that they had no way of learning the building's true size until an architect hired in preparation for this litigation reviewed drawings of

the building. *See* Robert Burka Aff. ¶¶ 42–45, at 14–15 *in* J.A. at 63–64. Appellants also claim that until 1993, none of the publicly available documents referring to the gross floor area of the building suggested it exceeded the limitation in the First Amendment. *See* Steven E. Sher Aff. ¶¶ 2, 17, at 1, 4 *in* J.A. at 40, 43. According to Aetna, the building's size was discoverable upon completion in 1980.

These are just the kind of disputed facts that preclude a grant of summary judgment. The same is true for Aetna's laches argument: a claim will not be barred under that doctrine unless it is shown that the party raising the defense was prejudiced by the other party's delay in raising the claim and that the delay was unreasonable. *See American Univ. Park Citizens Ass'n v. Burka,* 400 A.2d 737, 740 (D.C.App.1979). Nothing in the record establishes prejudice, and whether appellants' delay was unreasonable will turn on the same facts that are necessary to resolve the discovery question under the statute of limitations. As for Aetna's estoppel defense, the first resolution of those issues should be made by the trial court. Accordingly, we vacate the district court's order dismissing this case, and remand appellant's alternative claim for declaratory relief on the ground floor area issue to the district court.

*So ordered.*