Paul S. BURKA, et al., Plaintiffs,

v.

**AETNA LIFE INSURANCE
CO., et al., Defendants.**

Civil Action No. 94–0975 (CRR).

United States District Court,
District of Columbia.

Nov. 15, 1996.

Peter A. Greenburg, Rockville, MD, for Plaintiffs.

Charles H. Fleischer of Marsh Fleischer & Quiggle, Chartered, Bethesda, MD, and Michael William Sacks of Thompson, Hine & Flory, P.P.L., Washington, DC, for Defendant American University.

Paul J. Kiernan of Holland & Knight, Washington, DC, for Defendant Aetna Life Insurance Company.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

This case involves a dispute over property rights pertaining to a parcel of land in the District of Columbia. The land, comprising two contiguous lots, was an asset of a family trust, of which the plaintiffs Paul and Robert Burka (the Burkas) currently are trustees. The defendant Aetna Life Insurance Company (Aetna) acquired one lot, which was later acquired by the defendant American University (AU) for use as the site of AU's Washington College of Law. The Burkas, who still own the other lot, attack on several grounds a Declaration of Easement and Agreement ("Declaration") that, among other things, grants AU certain parking rights on the Burkas' lot and allocates the gross floor area of a building on the two lots.

Before the Court are the defendants' Motions for Summary Judgment and the plaintiffs' Opposition thereto. Also before the Court is the plaintiffs' Motion for Leave to File a Supplemental Complaint and the defendants' Opposition thereto. Based on the pleadings, the entire record herein, and the law applicable thereto, and for the reasons expressed below, the Court shall deny the plaintiffs' Motion for Leave to File a Supplemental Complaint and shall grant the defendants' Motions for Summary Judgment.

### BACKGROUND

#### I

The parcel of land at issue in this case is known as Lot 9, Square 1499, in the District of Columbia. Joint Statement of Material Facts Not in Dispute (JS) ¶ 1. Lot 9 contains a land area of 121,272 square feet, is zoned C–2–A, and is divided for assessment and taxation purposes, but not for zoning or land use purposes, into two contiguous lots known as Lot 806 and Lot 807. *Id.* ¶ 1–3. At all material times prior to 1993, Lots 806 and 807 were both owned by the Burka Trust or the beneficiaries thereof. *Id.* ¶ 11.

Lot 806 is improved by a six-story commercial building at 4801 Massachusetts Avenue, N.W. (the Building), which contains an underground parking garage. *See id.* ¶ 4. The Building was constructed in 1979–81, while the land was owned by the Burka Trust. *Id.* ¶ 14. The Building was constructed by Spring Valley Center, a District of Columbia limited partnership consisting of various Burka family members and others, which had groundleased Lot 806 from the Burka Trust. *See id.* At that time, District of Columbia zoning regulations permitted a maximum gross floor area ("GFA") for all structures on Lot 9 of 242,544 square feet, determined by multiplying the then-applicable 2.0 F.A.R. (floor area ratio) by the 121,272 square feet of Lot 9. *Id.* ¶ 6. The applicable F.A.R. is now only 1.5, yielding a maximum GFA of 181,908 square feet. *Id.* ¶ 7.

In order to facilitate construction of the Building, the Burka Trust in May 1979 recorded a Declaration of Easement and Agreement (Declaration) allocating the maximum permissible GFA for Lot 9 between Lot 806 (179,302 square feet) and Lot 807 (63,242 square feet). The Declaration separately grants and conveys to

> the owners from time to time of [Lot 806 and their] tenants, occupants, guests and business invites, a non-exclusive easement for vehicular parking of not less than 236 automobiles on the parking areas located from time to time upon [Lot 807].

The Declaration further provides that:

> The owners from time to time of [Lot 807] shall, at its expense, maintain the driveways and parking areas located on [Lot 807] at its sole expense.... The owners of [Lot 807] shall have the right to estab-

lish uniform and reasonable rules, regulations and conditions governing the use of the driveways and parking areas as may be appropriate for the convenience and safety of the persons making use thereof. JS Exh.B.

In order to finance the building, the Spring Valley Center borrowed $14 million from defendant Aetna. JS ¶ 17. The loan was secured by a Deed of Trust dated May 29, 1979, and recorded among the District of Columbia land records on May 30, 1979, as Instrument No. 17150. *Id.* ¶ 18. The Deed of Trust was executed by Spring Valley Center and by Seldon P. Shuman, who was then the sole trustee of the Burka Trust, in his capacity as the trustee. *Id.* ¶ 19. The security as described in the Deed of Trust expressly included "a non-exclusive easement for vehicular parking of not less than 236 automobiles [on Lot 807] as more particularly set forth in [the Declaration]." JS Exh. F.

The Deed of Trust went into default in 1991. JS ¶ 22. Aetna foreclosed in January 1993 and was the successful bidder at the foreclosure sale. *Id.* ¶ 23. Aetna acquired fee simple title to Lot 806, together with rights and obligations of the owner from time to time of Lot 806 created by the Declaration. *Id.* ¶ 24.

Lot 807, still owned by the Burka Trust, is improved by commercial structures containing 42,621 square feet of GFA used for retail purposes, which will increase to 44,680 square feet upon completion of improvements in accordance with permits already issued by the District of Columbia Government. *Id.* ¶ 8. Lot 807 contains approximately 226 parking spaces (exclusive of possible parking spaces in an alley on Lot 807) as follows: 110 spaces on the upper deck of a two-level parking facility; and 116 spaces on the lower deck of the two-level facility. *Id.* ¶ 9. The Burkas lease commercial space on Lot 807 to the Great Atlantic & Pacific Tea Company, Inc.; Spring Valley Enterprises, Inc., t/a DeCarlo's Ristorante; Salon Jean–Paul, Ltd.; and Apex Cinema, Inc. *See* Def. AU's Mot. at 2.

## II

On April 22, 1994, the Burkas filed this suit challenging the foreclosure and the va-

lidity of the underlying Declaration and Deed of Trust. The Burkas sought declaratory relief that the Building on Lot 806 exceeded the 179,302 square foot GFA allocated by the Declaration. In a Memorandum Opinion dated June 23, 1994, this Court granted summary judgment in favor of the defendant, and held that Aetna had obtained valid title to Lot 806. The Court also held that the Burkas were not entitled to ground rents for the period between the default on the loan and the foreclosure sale. *See Burka v. Aetna Life Ins.,* No. 94cv0975, Mem.Op. at 18 (D.D.C. June 23, 1994). The Court of Appeals affirmed the Court's grant of summary judgment on these claims, but remanded for a determination of the Burka's claim for declaratory relief as to the GFA claim. *Burka v. Aetna Life Ins.,* 56 F.3d 1509, 1510 (D.C.Cir.1995). With respect to the GFA claim, the Court of Appeals stated

> While we agree with the district court that [the Burkas'] gross floor area claim had no bearing on the validity of the foreclosure sale or the validity of the contested documents, it nonetheless presents a claim against Aetna that the court must resolve.

*Id.* at 1513–14.

Immediately after this Court granted summary judgment for Aetna on June 23, 1994, Aetna conveyed fee simple title to Lot 806, together with its interest in the Declaration, to AU. JS ¶ 25. After acquiring Lot 806, AU undertook renovations of the building for the purpose of using it to house the University's Washington College of Law. *Id.* ¶ 26. The defendant Aetna moved to substitute AU as defendant in this suit while the Burkas moved to join AU as an indispensable party defendant. The latter course, the Burkas argued, would destroy diversity jurisdiction and necessitate a remand to Superior Court. This Court held that the appropriate course was to substitute AU as a defendant and to retain jurisdiction over the suit. *Burka v. Aetna Life Ins.,* 894 F.Supp. 28 (D.D.C.1995). The plaintiffs took an interlocutory appeal of this Court's decision on the joinder issue, and the Court of Appeals affirmed this Court's decision. *Burka v. Aetna Life Ins.,* 87 F.3d 478 (D.C.Cir.1996).

In February 1995, the Burkas announced parking rules purporting to regulate the use of the parking facilities on Lot 807. The University filed a motion for preliminary injunction on December 22, 1995 seeking an order enjoining the enforcement of the parking rules in anticipation of the opening of the University's new law school facility on Lot 806. Also, A & P and Salon Jean–Paul moved to intervene.

On February 12, 1996, this Court denied the motions by A & P and Jean–Paul to intervene on the ground that their interests were adequately represented by the Burkas. The Court granted the University's Motion for a Preliminary Injunction. *Burka v. Aetna Life Ins.*, 917 F.Supp. 8 (D.D.C.1996). The Court subsequently denied a Motion by the Burkas to alter or amend its ruling. *See Burka v. Aetna Life Ins.*, No. 94cv0975 (D.D.C. Mar. 8, 1996) (Order). Again, the Burkas took an appeal.[1] The Court of Appeals affirmed the Court's grant of a preliminary injunction and its decision not to alter or amend that injunction. *Burka v. Aetna Life Ins.*, No. 96–7052 (D.C.Cir. Oct. 22, 1996) (Judgment).

The Court turns now to the remaining claims in this suit. In its Amended Complaint, the Burkas assert that an alleged excessive GFA of the building on Lot 806 and the change of use in the property from an office building to a law school terminates or abates the parking easement. In addition to monetary damages, the Burkas request that any parking easement be terminated and that AU be enjoined from maintaining a building in excess of the GFA specified in the declaration. AU has counterclaimed for declaratory and injunctive relief respecting their parking rights.

In the instant motions, the defendants seek summary judgment. The Burkas seek leave to file a supplemental complaint, which adds claims for trespass (Count I), misuse of the parking easement (Count II), enforce-

ment of an alleged promise relating to parking (Count III), and abandonment of the easement (Count IV).

## DISCUSSION

### I. THE COURT SHALL DENY THE PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT[2] BECAUSE IT IS PREJUDICIAL AND MERITLESS.

 The decision whether to permit a supplemental pleading is within the discretion of the court. 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1504 (2d ed.1990); *Keith v. Volpe*, 858 F.2d 467 (9th Cir.1988), *cert. denied*, 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 28 (1989); *Montgomery Env'l Coalition v. Fri*, 366 F.Supp. 261 (D.D.C.1973). The Court should grant leave to file a supplemental pleading when doing so will "promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." Wright § 1504. Furthermore, in deciding whether to grant or deny a motion to supplement, the Court may consider the merits of the proposed new pleading. *See Weekes v. Atlantic Nat. Ins. Co.*, 370 F.2d 264 (9th Cir.1966).

### A. The Allegations In The Supplemental Pleading Lack Merit.

In Count I of their Supplemental Pleading, the Burkas assert that the occupancy permit currently issued to AU for its law school is invalid because AU allegedly misrepresented the number of students attending the law school in applying for the permit. Thus, according to the Burkas, any use of the property by AU is illegal and, consequently, parking by AU on the Burkas' land constitutes a trespass. The Burkas' claim is both factually and legally deficient.

---

1. A & P also noted an appeal, but dismissed it before briefing. Jean–Paul took no appeal. Instead, it filed a new action in Superior Court, which it later dismissed.

2. The Court also is in receipt of the Plaintiffs' Supplemental Memorandum of Points and Authorities in Opposition to Defendants' Motions for Summary Judgment. That pleading repeats much of the same arguments set forth in the plaintiffs' Supplemental Complaint. The Court has fully considered that supplemental pleading in deciding the instant motions.

In completing its occupancy permit application under D.C.Code § 5–426, the University responded "1200 students" to question 12, which asked for the Building's "Proposed Occupancy Load." Def's Opp. to Mot. for Leave to File Supp.Compl.Exh. D. The Burkas claim that this is a misrepresentation on the part of AU because the law school has an enrollment of 1354 students. Plaints' Supp.Mem. in Opp. to Summ.Jud. at 6. However, occupancy of a building and enrollment in the law school are two different things. *See* Depo. of Gladys Hicks, current Acting Zoning Administrator, at 96–99 (testifying that the DC government needs to know about building load for parking, fire safety, and similar purposes). Thus, there is no basis to find that AU's assertion of an occupancy of 1200 students when it has an enrollment of 1354 constitutes a misrepresentation.

Furthermore, AU's certificate of occupancy enjoys a presumption of validity. *Brawner Bldg., Inc. v. Shehyn*, 442 F.2d 847, 855 (D.C.Cir.1971). Attacks on such certificates belong, in the first instance, not before the courts, but before the administrator and then the DC Board of Zoning Adjustment. *Id.,* 442 F.2d at 854 (district court erred in determining merits of, and enjoining, alleged use violation; court should have required recourse to administrative remedies); D.C.Code § 5–424(f) and 11 D.C.M.R. § 3200.2 (appeals of occupancy certificate matters are to the Board of Zoning Adjustment); 14 D.C.M.R. §§ 1406 et seq. (certificate of occupancy may be revoked by Director of the Department of Consumer and Regulatory Affairs after notice, with right of appeal to Board of Zoning Adjustment). Moreover, even if AU's occupancy permit must be reissued, that would have no effect on the ultimate disposition of this case.

Count II of the Supplemental Pleading claims that AU misused its parking easement by allegedly violating a term in the Court's preliminary injunction order stating that AU "shall make all reasonable efforts to fully utilize its own parking facilities before utilizing those on [the Burka property]." Taking this allegation as true, the proper way to question compliance with a preliminary injunction condition is by motion to modify or dissolve the injunction or for a motion for order to show cause and sanctions, not a motion for leave to supplement a prior pleading. *See* Wright §§ 2960, 2961. That notwithstanding, AU's alleged non-compliance with this provision of the preliminary injunction also does not effect the ultimate disposition of this case.

In Count III, the Burkas allege that AU represented to the owner of the grocery store located on the Burkas' property, and to the residents of the neighborhood, that AU would not park on the upper deck of the Burkas' parking facility. The Burkas seek leave to supplement their complaint with a claim that AU should "in equity and good conscience, be required to conform itself to the aforesaid pledge." However, the alleged "pledge" made by AU to the grocery store owner is not alleged to have taken contractual or other binding form, such that the grocery store or anyone else could enforce it. The Burkas do not claim to be beneficiaries of such an understanding between the grocer and AU. Nor do the Burkas claim that they relied upon such a promise to their detriment. The Court fails to see how the Burkas allegations in this regard even state a claim.

As for Count IV, the Burkas claim that the above-detailed "pledge" is inconsistent with the terms of the Declaration and constitutes an abandonment and relinquishment of any rights that AU might have with respect to parking on the Burkas' property. To support a claim of abandonment, it must be established that AU intended to make no further use of the easement. *Kogod v. Cogito,* 200 F.2d 743, 745 (D.C.Cir.1952). *See also Fields v. District of Columbia,* 443 F.2d 740, 744 (D.C.Cir.1970) (dominant estate owners not required to use entire sixteen feet of roadway in order to preserve their right to do so). AU's alleged voluntary undertaking to accommodate the grocery store and its customers by restricting its current enjoyment of the easement to the lower deck would not constitute an abandonment of its parking easement.

### B. A Supplemental Pleading At This Juncture Would Be Prejudicial.

Subsequent to the Court's grant of summary judgment in favor of the defendant

Aetna over two years ago, the Court of Appeals remanded this case solely for the Court to resolve the Burkas' GFA claim. *See* 56 F.3d at 1513. At a status conference held on July 29, 1996, the parties agreed in open Court that the only issue left is whether the Declaration grants AU non-exclusive parking rights on the Burkas' property. *See* Order filed July 30, 1996. Also at that status conference, a date was set for the close of discovery and a schedule was set for the filing of summary judgment motions and a joint statement of material facts not in dispute. All that having been completed, the case is ripe for resolution.

The Court sees the instant Motion for Leave to File a Supplemental Complaint at this juncture to be yet another tactic by the plaintiffs to avoid this Court ever putting this case to rest. The further delay of this suit would be costly and burdensome to all concerned with and affected by the parking situation at issue. Moreover, the Burka's Supplemental Complaint would needlessly delay resolution of a dispute that is ripe for resolution now and, but for the dilatory tactics of the plaintiffs, should have been resolved years ago.

## II. THE COURT SHALL GRANT THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.

The Court must grant summary judgment for the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 1).

An issue must be both genuine and material to preclude the entry of summary judgment. *Id.* at 247–48, 106 S.Ct. at 2509–10. An issue is genuine if there is sufficient evidence to support a rational finding either way. In making this determination, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255, 106 S.Ct. at 2513. "Only disputes of facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

The Court of Appeals upheld this Court's decision that the Declaration is valid and enforceable against the plaintiffs. The Court of Appeals further agreed that the plaintiffs' GFA claim had no bearing on the validity of the Declaration. It remanded only for a determination of the plaintiffs' claim for declaratory relief as to whether the Building exceeded the GFA. *See Burka*, 56 F.3d at 1510.

At present, the GFA is disputed. The Burkas allege that the Building on Lot 806 contains 181,566 square feet of GFA (2,264 square feet more than permitted by the Declaration). AU contends that the Building contains 175,314 square feet of GFA (3,988 square feet less than that permitted by the Declaration). For the purposes of their motion for summary judgment, however, AU is willing to accept the larger figure. It is AU's contention that as a matter of law, based on the undisputed facts, the Burkas cannot prevail on their affirmative claims; the parking rules asserted by the Burkas eliminate the easement rights granted and conveyed by the Declaration; and AU is entitled to permanent injunctive relief.

The Burkas contest the motion for summary judgment on the basis, *inter alia*, that there exist genuine issues of material fact and that further discovery is necessary. In support, they have filed a "Statement of Genuine Issues of Fact Necessary to be Litigated" and a Federal Rule of Civil Procedure 56(c) declaration. The Burkas propose that genuine issues of fact exist as to the original purpose and intent of the Declaration and

the way in which it has historically been implemented. Also, the Burkas claim that issues of fact exist as to AU's use of and need for parking on the Burka property. However, these issues are not material.

The Declaration provides for "a non-exclusive easement for a period of 99 years for vehicular parking of not less than 236 automobiles on the parking areas to be located from time to time upon [Lot 807]." Decl. at 2. There is no ambiguity in the language of the Declaration such as would justify a proffer of extrinsic evidence as to its meaning. *See Hart v. Vermont Investment L.P.,* 667 A.2d 578, 586 (D.C.1995); *Taylor v. Eureka Inv. Corp.,* 482 A.2d 354 (D.C.1984); *1010 Potomac Assoc. v. Grocery Mfrs. of Am., Inc.,* 485 A.2d 199, 211 (D.C.1984); *Stamenich v. Markovic,* 462 A.2d 452, 456 (D.C.1983); *Boomhower Inc. v. Lavine,* 151 F.Supp. 563, 567 (D.D.C.1957). Thus, any disputed facts with regard to the drafters' intent and purpose or historical use is not material.

Furthermore, the easement has been adjudged valid and enforceable. AU's present need for or use of parking is not relevant to the issuance of permanent relief. AU, as owner of the dominant estate under the easement, is entitled to the enjoyment of the easement without interference unless the Burkas can establish that the easement has somehow been forfeited or extinguished. *See Penn Bowling Recreation Ctr. v. Hot Shoppes, Inc.,* 179 F.2d 64 (D.C.Cir.1949).

**A. AU Is Entitled to Summary Judgment on Count I of the Amended Complaint; the Alleged Excess Gross Floor Area of the Building Does Not Terminate or Abate the Easement.**

The Burkas assert that the alleged excess GFA constitutes a misuse of any parking rights and somehow terminates or abates the parking easement. To justify the loss of easement rights, misuse of an easement must be wilful and substantial, not merely technical. Thompson on Real Property, § 444 at p. 747 (1995). The alleged overage of the Building can be neither wilful nor substantial. It cannot be "wilful" on the part of AU

because the Building was built by members of the Burka family on land then owned by the Burka Trust, nearly 15 years before AU purchased the property. It is not disputed that AU actually reduced the square footage of the Building subsequent to its purchase. Furthermore, the alleged misuse cannot be substantial because the alleged overage of the Building amounts to only a 1.26% increase over the size allotted in the Declaration. *See Saah v. District of Columbia Board of Zoning Adjustment,* 433 A.2d 1114, 1117 (D.C.1981) (5% violation of the District's lot occupancy limitation was insufficient to justify regulatory action).

**B. AU Is Entitled to Summary Judgment on Count II of the Amended Complaint; the Change in Use of the Building Does Not Terminate or Abate the Easement.**

In Count II, the Burkas assert that the change in use of the Building terminates or abates the easement. A limitation on the existence and continuance of an easement privilege can be predicated upon a change in the character or use of the dominant property only when an intention to impose such a limitation is found in the language of the grant itself. Thompson on Real Property, § 444 at p. 747 (1995). *Accord Wheeler v. Lynch,* 445 A.2d 646, 648 (D.C. 1982) (grant of easement in general terms without restriction "is available for all reasonable uses" to which dominant estate may be devoted; use at time easement created does not absolutely limit future use); *Penn Bowling,* 179 F.2d at 64 ("[W]here the nature and extent of the use of an easement is, by its terms, unrestricted, the use by the dominant tenement may be increased or enlarged."). Nothing in the Declaration limits Lot 806 to office or retail use, or conditions the continued enjoyment of the parking easement on such use.

**C. AU Is Entitled to Summary Judgment on Count III of the Amended Complaint; Equity Does Not Permit the Court to Enjoin AU's Use of the Allegedly Oversized Building.**

In Count III, the Burkas assert that because the Building contains a GFA in ex-

cess of that permitted by the Declaration, the Burka Trust suffers harm. The Burkas ask that the Court enjoin AU from maintaining the Building with a GFA in excess of that permitted by the Declaration.

In *Saah v. District of Columbia Board of Zoning Adjustment,* 433 A.2d 1114, 1117 (D.C.1981), a property owner-developer built a building in excess of the District's lot occupancy limitation by 5%. The Court said that it would not compel the offending property owner to undertake substantial reconstruction and perhaps dismantle the entire building. "Equity, which will not require a wasteful act, will not permit such a result where the public's interest is only minimal." 433 A.2d at 1117. Here, any interest the Burkas possibly have in lessening the size of AU's Building is outweighed by the fact that the Burkas themselves are more responsible for the overage of the Building than is AU. AU has, instead, reduced the GFA by renovation. Equity would not permit the Court to enjoin use of the Building by AU here.

**D. AU Is Entitled to Summary Judgment on Count IV of the Amended Complaint; the Alleged Excessive Building Size Does Not Injure the Burkas And the Burkas' Claim is Barred by Limitations.**

*1. The Burkas have not alleged injury by the Excessive Building Size.*

■ Count IV asserts money damages as a result of the existence of the building with a GFA greater than that permitted by the Declaration. However, the Burkas have not shown how the alleged overage has damaged them. For example, under the District's zoning law, minimum parking requirements for a school are a function of the number of student seats and number of teachers. 11 D.C.M.R. § 2101.1. Additional GFA in itself does not effect minimum parking requirements for zoning purposes. As for the Burkas' development rights, even if the Building conformed with the allocations in the Declaration, the structures of Lots 806 and 807 would not conform to the District's current F.A.R. allowance. Thus, the Burkas would not be permitted to expand development in Lot 807 even if the Building contained only

179,302 square feet, as the Declaration provides.

To the extent that the Burkas argue that their redevelopment rights are limited in the event of a casualty loss, such damage is remote and speculative. Also, as pointed out by AU, the alleged GFA excess would become moot in the event of a casualty loss since, pursuant to 11 D.C.M.R. § 2001.4, an owner may rebuild a nonconforming structure after a casualty unless the casualty amounts to more than 75% of the cost of rebuilding the entire structure. Since the buildings on the two lots are considered one structure, the alleged redevelopment limitation would only arise if AU's Building were damaged as well, in which case both the Burkas and AU would be limited to rebuilding a combined, conforming structure.

*2. The Burkas' claim is barred by the statute of limitations.*

■ The Burkas assert that the twelve-year statute of limitations governing actions on sealed documents applies to their GFA claim, since the Declaration is an instrument under seal. *See* D.C.Code Ann. § 12–301(6). They also argue, alternatively, that the fifteen-year statute of limitations governing the recovery of lands, tenements, or hereditaments applies. *See* D.C.Code Ann. § 12–301(1). In any event, the Burkas assert that the breach was difficult to discover; therefore, any statute of limitations would not begin to run until it had reason to know of the breach when an architect they hired in preparation for this litigation reviewed drawings of the Building in May 1992. *See Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1201–04 (D.C.1984) (where breach difficult to discover, statutes does not run until injured party should have known of breach).

AU argues that the Burkas' GFA claim is barred by the three-year statute of limitations applicable to breach of contract actions. *See* D.C.Code Ann. § 12–301(7) (1995); *Construction Interior Sys., Inc. v. Donohoe Cos.,* 813 F.Supp. 29, 33 n. 4 (D.D.C.1992) (same period applies for any equitable claims arising form the same conduct). AU argues that the building's size was discoverable upon completion in 1980, which is when the statute of limitations began to run.

The Court agrees that Building's size should have been known by the Burkas upon the building's completion in 1980; thus, the statute of limitations for any claim to remedy for excess building size began to run at that time. The Burka Trust owned the land that was groundleased for the purpose of constructing the Building. Fred and David Burka—two of the general partners of the limited partnership that built, owned, and operated the Building—were former trustees of the Burka Trust. As the plaintiffs have conceded, those two family members "led the family in business matters, ... induced the other family members to rely on their good will and business judgment, and ... the other family members accepted such leadership and relied thereon." Plaint's Opp. to Summ. Jud. at 21. Furthermore, in February 1995, the Burkas issued parking rules that recognized that until "approximately January 1993" the two lots "were under the ownership, administration and control of the same or related entities." In a Superior Court decision involving objections by neighbors to this very Building, the Court stated

> [T]he owner's significant efforts here to clear the way for development, by seeking to close the alley in order to construct an extra large building, were obvious signals to those in the area who learned about them in 1973. Potential opponents should not ordinarily be permitted to ignore such signals to wait until a developer has obtained zoning, architectural plans, financing, and/or other costly prerequisites to a building permit and then claim the right, at the last minute, to sue....

*American University Park Citizens Ass'n v. Burka*, 400 A.2d 737, 744 (D.C.1979) (emphasis added). It is inconceivable that the Burka Trust did not have reason to know the size of the Building under these circumstances.

■ Since the claim accrued in 1980, it is barred by either a three or twelve year statute of limitations. As for the Burkas assertion that a fifteen-year statute applies, the Court notes that this assertion was raised for the first time during this litigation in the Burkas' present Opposition to Summary Judgment. Regardless, it has no merit, as the Burkas' claim for money damages based on the GFA excess is not a claim "for the recovery of lands, tenements, or hereditaments"; thus, it is not entitled to a fifteen-year statute of limitations under the D.C.Code § 12–301(1).

### E. AU Is Entitled to Summary Judgment on Claim V of the Amended Complaint; AU's Use of Parking Facilities on the Burka Property Is Consistent with its Rights Pursuant to the Easement.

In Count V, the Burkas claim money damages for the excessive and improper use by AU of parking facilities on the Burka Property. As detailed above, however, the Court has rejected the Burkas' contentions that AU has misused parking rights under the easement. Therefore, the Burkas cannot prevail on Count V of the Amended Complaint.

### F. AU Is Entitled to Summary Judgment on its Counterclaim.

The Declaration grants the owners of Lot 806 a non-exclusive easement for a period of 99 years for vehicular parking of not less than 236 automobiles on Lot 807. AU's Counterclaim seeks to enjoin the Burkas from enforcing its announced parking rules and from otherwise interfering with AU's parking rights.

#### 1. *The Parking Rules issued by the Burkas impermissibly interfere with the easement.*

■ The Declaration provides:

The [Burka Trust] shall, at its expense, maintain the driveways and parking areas located on [Lot 807] at its sole expense. The [Burka Trust] shall have the right to relocate the driveways and parking areas on [Lot 807] in its sole discretion, provided that such relocation shall not unreasonably interfere with the rights granted hereunder. The [Burka Trust] shall have the right to establish uniform and reasonable rules, regulations and conditions governing the use of the driveways and parking areas as may be appropriate for the convenience

and safety of the persons making use thereof.

JS Exh.B.

The parking rules issued by the Burkas limit AU to the minimum spaces required by zoning regulations, less all spaces (including non-qualifying vault spaces) in the garage under AU's Building. Applying that formula to the facts in this case, the effect would be to preclude AU's use of any easement parking at all.[3] The parking rules also require AU to pay monthly fees to the Burkas and impose other limitations that find no basis in the users' safety or convenience. *See Taylor v. Eureka Inv. Corp.*, 482 A.2d 354 (D.C. 1984) (when easement for parking silent with respect to fees, the attempt to impose fees violated the easement). Also, the rules are not uniform. There is no evidence that they even apply to the Burkas' other tenants. Because the parking rules impermissibly interfere with the rights granted by the easement, the Court shall enjoin their enforcement.

2. *Injunctive relief is appropriate because AU has no adequate remedy at law.*

 An injunction is an "appropriate form of relief for an obstruction of an easement ... particularly since the holder of an easement may lack sufficient possessory interest necessary to obtain relief by means of an action in trespass or for ejectment." *Zlotnick v. Jack I. Bender & Sons, Inc.*, 285 F.Supp. 548, 555 (D.D.C.1968), *modified,* 422 F.2d 716 (D.C.Cir.1970) (injunctive relief granted when defendant obstructed plaintiff's alley easement). Courts typically find that injunctive relief is merited when there is interference with a dominant estate's parking and related easement rights. *See Pacemaker Food Stores, Inc. v. Seventh Mont Corp.*, 117 Ill.App.3d 636, 72 Ill.Dec. 931, 453 N.E.2d 806 (1983); *West Town Plaza Assoc., Ltd. v. Wal–Mart Stores, Inc.*, 619 So.2d 1290 (Ala.1993); *Caniglia v. Nigro Corp.*, 441 S.W.2d 703 (Mo.1969); *Hagist v. Washburn,* 16 Conn.App. 83, 546 A.2d 947 (1988); *Smith v. Rose Courts, Inc.*, 220 Ark. 179, 246 S.W.2d 554 (1952); *100 Center Dev. Co. v. Hacienda Mexican Restaurant, Inc.*, 546 N.E.2d 1256 (Ind.App.1989); *London v. Detroit,* 354 Mich. 571, 93 N.W.2d 262 (1958).

Based on the entire record of this case, the Court is persuaded that AU is entitled to the relief it seeks. Moreover, the record is undisputed that AU has made efforts to accommodate its neighbors' parking needs, *see* Def's Mot. for Summ.Jud. at 21; Plaints' Supp.Mot. in Opp. at 9, completely undermining the Burkas' claim that AU has used the parking facility in a manner "calculated to bring the greatest disruption to the Burkas' tenants," *see* Plaints' Supp.Mot. in Opp. at 11. While the Court is cognizant of the Burkas' predicament, the harm they now suffer is self-inflicted. The Burkas themselves created the parking regime from which they have sought relief.

## CONCLUSION

This case has been to the Court of Appeals three times. The Declaration creating the parking rights now in use by AU's law school was created by the Burkas or members of their family trust. The Burkas failed to pay the defendant Aetna $14 million they borrowed from it, resulting in the aforementioned foreclosure. Now, as a result of their own conduct in creating the easement and duly recording it among the land records of the District of Columbia, they are barred by any equitable principles known to humankind from asserting the ridiculous claims now before the Court. As a matter of fact, this is the second time during the Court's long judicial service when it has considered that sanctions might be appropriate because the plaintiffs and their counsel have either acted unreasonably, which is to put it mildly, or vexatiously, so as to multiply these proceedings, and their continued conduct from day one is nothing short of bad faith in violation of 28 U.S.C. § 1927. The plaintiffs have multiplied this case as to cause the rightful owners of this easement to go to unnecessary and unreasonable expenses

---

3. The law school must provide no more than 147 qualifying spaces to meet minimum zoning requirements. JS ¶ 28. The garage under the law school's building contains 300 spaces, of which 185 qualify for zoning purposes, 80 are non-qualifying vault spaces, and 35 are non-qualifying undersized spaces.

when it is the result of the plaintiffs' own actions in the original instance that the plaintiffs seek to have modified or set aside.

For the above reasons, the Court shall deny the plaintiffs' Motion for Leave to File a Supplemental Complaint. The Court shall grant the defendants' Motions for Summary Judgment. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 14th day of November, 1996,

ORDERED that the plaintiffs' Motion for Leave to File a Supplemental Complaint shall be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that the defendants' Motions for Summary Judgment shall be, and the same hereby are, GRANTED; and it is

FURTHER ORDERED that the plaintiffs, their employees, agents, licensees, tenants, successors, and assigns, all those claiming through or under them, and all those acting in concert with them, are hereby permanently enjoined from (1) enforcing or attempting to enforce against the University and its guests, business invites, and other occupants of the property at 4801 Massachusetts Avenue, N.W., Washington, DC, known as Lot 806, certain Parking Rules and Regulations announced by the Burkas in February 1995, and (2) otherwise interfering with, restricting, or diminishing the rights granted and conveyed under the Declaration of Easement and Agreement dated December 20, 1978, and recorded May 25, 1979, as Instrument No. 16911, including the non-exclusive easement for vehicular parking of not less than 236 automobiles on the parking areas located from time to time upon Lot 807; and, it is

FURTHER ORDERED that final judgment shall be, and hereby is, entered in favor of the defendants on all claims by the plaintiffs against them; final judgment is entered for the University on its counterclaim against the plaintiffs in the above-entitled case; and

any and all extant Motions in the above-captioned case shall be, and hereby are, declared MOOT; and, it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the dockets of this Court, with costs in favor of the defendants.